FORREST CITY MACHINE WORKS, INC., and
Mallard Farms Holding Co., Inc., and David A. Hodges *v.*
Robert A. MOSBACHER, in His Official Capacity as
Secretary of Commerce of the United States of America;
and Twin City Bank

92-339                                        851 S.W.2d 443

Supreme Court of Arkansas
Opinion delivered April 19, 1993

*David Hodges*, for appellants.

*Dover & Dixon, P.A.*, by: *David A. Couch*, for appellee Twin City Bank.

*Russell W. Craig*, Chief of Commercial Litigation Division of the Department of Commerce, for appellee Mosbacher.

ROBERT L. BROWN, Justice. This case concerns a grant of summary judgment to appellee Twin City Bank on various counterclaims asserted by the appellants, Forrest City Machine Works, Inc. and Mallard Farms Holding Co., Inc., and David A. Hodges. The appellants urge that the chancellor erred in his decision. They further invite this court to review the record, as abstracted, to see if facts were established to overcome summary judgment. The background of the case is complex and involves multiple issues, shifting parties, and interplay between federal and state court decisions. We conclude that the chancellor correctly awarded summary judgment, and we affirm his order.

The essential facts are these. Appellee Twin City Bank agreed to make a working capital loan to the appellant Forrest City Machine Works, Inc. on March 30, 1983. The loan was

secured by farm land and guaranteed by appellants, Mallard Farms Holding Company and David A. Hodges, and by the United States Department of Commerce. On August 13, 1990, following default, the Bank foreclosed on the note and mortgage. In a counterclaim, the appellants alleged three causes of action: malicious prosecution, abuse of process, and tort of outrage. The tort counterclaims had their foundation in allegations that the Bank knew that the foreclosure suit was groundless because of litigation and a settlement between the parties in bankruptcy court in 1986.

In 1990, the Bank sued appellee Department of Commerce in the name of then-Secretary Robert A. Mosbacher, in federal district court on its guarantee of the Forrest City Machine Works loan. The Commerce Department brought the appellants into the suit on a third-party complaint as the primary obligors on the loan. In December 1990, the Commerce Department was substituted as party plaintiff for the Bank in the federal litigation as part of a settlement between the Department and the Bank.

On February 4, 1991, Special Chancellor John W. Martin denied the appellants' motion for summary judgment relating to the Bank's foreclosure suit. That motion had been predicated on *res judicata* due to the prior litigation in bankruptcy court.

On May 30, 1991, the federal district court entered a directed verdict at trial in favor of the appellants because of the failure of the Commerce Department to prove its case against the appellants.

On February 3, 1992, the chancellor granted summary judgment to the appellants on the working capital loan based on the decision of the federal district court. The chancellor also granted the Bank and the Commerce Department summary judgment on the appellants' three tort counterclaims and dismissed a fourth amended counterclaim. Notices of appeal were filed by both appellants and appellees on March 2, 3, and 9, 1992.

On March 17, 1992, the appellants filed a partial record in this court. The partial record was comprised of a petition for writ of certiorari to complete the record; the chancellor's decision on the various motions, including the summary judgments; notices of appeal by the appellants and appellees; and a motion to modify

by the appellees. We granted the writ of certiorari on April 6, 1992.

On February 24, 1992, the federal district court reversed itself and set aside its May 30, 1991 order for a directed verdict in favor of the appellants. The court reinstated the Commerce Department's third-party complaint against the appellants, and the matter was set for a second trial on August 10, 1992.

On April 24, 1992, the chancellor vacated his order in favor of the appellants as a direct result of the reversal by the federal district court of its decision and reinstated the Commerce Department's lawsuit.

On August 12, 1992, the Commerce Department settled the federal litigation with the appellants. The appellants filed their abstract and brief in this court as part of this appeal a month and a half later on September 28, 1992. On March 10, 1993, the Commerce Department moved this court to dismiss its appeal due to the settlement in federal district court.

## I. APPEALABLE ORDER

We first address the question raised by the Bank of whether we have a final appealable order before us which disposes of all of the issues between the parties on appeal as required by Ark. R. App. P. 2(a) and Ark. R. Civ. P. 54(b). The chancellor reinstated the Commerce Department's cause of action against the appellants on April 24, 1992, but did so after he had lost jurisdiction of the case due to a filing of a partial record in this court on March 17, 1992, following notice of appeal.

Despite the ineffectiveness of the chancellor's order, the cause of action between the Commerce Department and the appellants has been settled and is moot. This is evidenced by the Commerce Department's motion to dismiss its appeal filed March 10, 1993, and the appellants' representation in their brief that all matters between the Commerce Department and them had been settled and that an order of dismissal had been entered in federal district court on August 12, 1992.

The motion to dismiss appeal is granted. Hence, all issues between the parties have been disposed of, and the matter is ripe for appeal. Because several issues raised by the appellants on

appeal derive from the cause of action assigned by the Bank to the Commerce Department and then settled, they are now moot, and we will not consider them.

## II. TORT COUNTERCLAIMS

The dismissal of the Commerce Department's appeal does not affect the appellants' appeal of the summary judgment in favor of the Bank relating to the tort counterclaims.

We begin by summarizing our standards for summary judgment review. In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon* v. *H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes* v. *Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Lovell* v. *St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992); *Harvison* v. *Charles E. Davis & Assoc.*, 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan* v. *City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991). Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. Ark. R. Civ. P. 56(c); *Short* v. *Little Rock Dodge, Inc.*, 297 Ark. 104, 759 S.W.2d 553 (1988); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317 (1986).

The appellants first urge that the Bank prosecuted its foreclosure claim on August 30, 1990, with malice because the Bank was well aware that the claim was part of a prior settlement in bankruptcy court. In reviewing the tort of malicious prosecution, we concentrate on facts that occurred before the action was commenced. *Cordes* v. *Outdoor Living Center, Inc., supra.* The essential elements of the tort are: 1) institution of a legal proceeding; 2) termination of that proceeding in favor of the plaintiff; 3) absence of probable cause to institute the proceeding; 4) malice; and 5) damages. *Farm Services Cooperative* v.

*Goshien Farms*, 267 Ark. 324, 590 S.W.2d 861 (1979).

The salient element that is clearly not present in this case to support the appellants' contention is a terminated proceeding in the appellants' favor. When the chancellor granted the Bank summary judgment on this counterclaim, the foreclosure suit was pending. Since that time, the suit was assigned to the Commerce Department, and now it has been settled with the appellants. Hence, it has never been terminated in favor of the appellants. Accordingly, the claim of malicious prosecution has no merit.

Nor has the claim of abuse of process. We recently set out the requirements to sustain this tort. There must be:

> (1) a legal procedure set in motion in proper form, even with probable cause, and even with ultimate success, but, (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a wilful act in the use of process not proper in the regular conduct of the proceeding.

*Union National Bank* v. *Kutait*, 312 Ark. 14, 17, 846 S.W.2d 652, (1993). In considering this tort, we focus on facts occurring after the institution of the action. *Cordes* v. *Outdoor Living Center, Inc., supra.* If there was no "process" abused after the initiation of the action, a cause of action will not be sustained. *Union National Bank* v. *Kutait, supra.*

The appellants failed to show the chancellor or this court any factual basis to support a claim that some process was issued and abused after the foreclosure complaint was filed, and that the additional process was used for a coercive or improper purpose. This showing was pivotal to withstand summary judgment. The chancellor correctly found this counterclaim to be meritless as a matter of law.

The appellants further counterclaimed on the tort of outrage. We have described the essential elements of this tort as follows:

> 1. The act must be intended to inflict emotional distress or the actor must know or should have known that emotional distress was likely to result from his conduct;

2. The conduct must be extreme and outrageous and utterly intolerable in a civilized society; and

3. The distress suffered must be so severe and of such a nature that no reasonable man could be expected to endure it.

*Deason* v. *Farmers and Merchants Bank*, 299 Ark. 167, 771 S.W.2d 749 (1989).

It is clear to us that this has been a hotly contested matter between the Bank and the appellants in which emotions ran deep and feelings were at a high pitch. The appellants in particular feel aggrieved by what they perceive as the Bank's bad faith. The primary contention supporting the outrage claim is that the Bank brought the foreclosure action in 1990 when it knew the action was barred under the doctrine of *res judicata* by a 1986 settlement agreement between the parties in bankruptcy court and by the statute of limitations. On these claims and others the chancellor made this finding:

> I am of the opinion that all of the allegations, if true, fall woefully short of outrageous and indecent conduct, even when viewing the record most favorably to the Respondent to the Summary Judgment.

We agree. The test for outrage is an extremely narrow test that is committed by the most heinous conduct. The allegations by the appellants simply do not approach that level. Nor were there issues of material fact presented which might support the cause of action.

## III. AMENDED COUNTERCLAIM

We next turn to the appellants' appeal of the chancellor's order dismissing their amended counterclaim which sought a declaratory judgment relating to a debt claimed by the Bank in the amount of $620,000 and a statute-of-limitations defense raised by the appellants. The Bank had objected to the amended counterclaim under Ark. R. Civ. P. 15(a) as in no way relating to the pending litigation. The chancellor found that the counterclaim was directed to a separate debt that was not part of the chancery litigation and, thus, should not be addressed.

The appellants argue vigorously that the counterclaim,

though it regarded a separate indebtedness, was compulsory and would have been barred under the doctrine of *res judicata* if not asserted in St. Francis County Chancery Court. That debt, however, emanated from a separate loan between the parties and had been foreclosed, following default, in another jurisdiction — Jackson County Chancery Court — and was then the subject of a bankruptcy court settlement in 1986.

The appellants have presented us with nothing persuasive in their briefs to convince us that the chancellor abused his discretion in dismissing the amended counterclaim. The $620,000 indebtedness was a separate matter originally foreclosed in a different venue. Even if it did somehow relate to the working capital loan which *was* the subject of this appeal, that matter has been settled between the appellants and the Bank's successor in interest — the Commerce Department.

There is no reason to reverse the chancellor on this point.

## IV. RULE 9

The Bank did not raise the issue of Rule 9 deficiencies, but we may do so on our own motion. Ark. Sup. Ct. R. 9(e)(2). We observe in this appeal that we were subjected by the appellants to an abstract of five volumes totalling almost 1,200 pages. In reviewing the abstract, it became obvious that the appellants had not fully complied with Rule 9(d) which states in part:

> The appellant's abstract or abridgement of the records should consist of an impartial *condensation*, without comment or emphasis, of only such *material* parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented to this court for decision. (Emphasis ours.)

There was some effort by the appellants to abridge, abstract, and condense the pertinent parts of the record which our rule requires. The record was fifteen volumes plus exhibits and ran over 3,500 pages in length. The abstract was 1,200 pages. The appellants also included record references, as required by the rule, and abstracted some testimony in narrative form. They also state in their Reply Brief that they felt compelled to present an expansive abstract for this court to review in order to determine

issues of fact that would contravene the summary judgment granted on the tort counterclaims.

Nevertheless, a considerable number of pages appear to be a verbatim retyping of the record, and much of the testimony abstracted is verbatim colloquy which has been retyped. Further, a good portion of the abstract is in single-spaced type. Single spacing is not expressly prohibited under Rule 9, but double spacing is required in briefs under Rule 8. That has been the universal practice in this court for abstracts, as well.

Moreover, the appellants begin the Statement of the Case with a statement that their lawsuit with the Department of Commerce has been settled in federal district court. Yet, the abstract abounds with irrelevant and redundant material relating to the federal litigation.

The question we must address is whether the abstract is *flagrantly* deficient as a whole. We take this opportunity to underscore, yet again, the point that excessive abstracting is as violative of our rules as omissions of material pleadings, exhibits, and testimony. *Rose City Property Owner's Assoc.* v. *Thorne*, 299 Ark. 29, 770 S.W.2d 655 (1989); *Coffelt* v. *Arkansas State Hwy. Comm'n*, 289 Ark. 348, 712 S.W.2d 283 (1986); *Oaklawn Jockey Club, Inc.* v. *Jameson*, 280 Ark. 150, 655 S.W.2d 417 (1983); *Harris* v. *Arkansas Real Estate Comm'n*, 274 Ark. 537, 627 S.W.2d 1 (1982).

What distinguishes those cases from the present case is that in all of those cases there was no concerted effort to comply with Rule 9. The appellants copied either most or all of the record as their abstract. Here, the appellants did condense the record by more than one-half and did not simply copy parts of the record for their abstract. They also included record references throughout the abstract. And a portion of the pleadings, testimony, and exhibits is abstracted correctly.

The lapses in full compliance with Rule 9 procedures give us concern. As former Justice George Rose Smith related in his concurring opinion to *Oaklawn Jockey Club* v. *Jameson, supra*, members of this court are expected to read the abstract and when there is no discernible basis for inclusion of material, the court must engage in a prodigious waste of time. We enforce Rule 9 to

hold practicing lawyers to a reasonably high standard of compliance.

We disagree with the appellants that a fullblown abstract was necessary to determine the existence of factual issues involved in the tort counterclaims. It would have been a relatively simple matter to prepare an abstract pertinent to the tort counterclaims, highlighting the factual issues that the appellants wished to bring to this court's attention.

Though the abstract was excessive and burdensome, we opted to review the case on the merits only because of a considerable condensation of a fifteen volume record and a manifest effort to comply with Rule 9. With this opinion as notice, we will be less tolerant of failures to condense, double space, and abstract in narrative form in the future.

Affirmed.

DUDLEY, J., concurs.

ROBERT H. DUDLEY, Justice, concurring. I concur in denying relief to the appellants, but I would do so by dismissing the appeal because the appellants' abstract is flagrantly deficient. In cases where an appellant has made no meaningful effort to comply with Rule 9 of the Rules of the Supreme Court and Court of Appeals, it has been our longstanding practice to either affirm or dismiss the appeal without considering the merits. In this case, appellant has made no meaningful effort to comply with Rule 9.

The essential facts involved in this appeal are that appellee Twin City Bank loaned money to appellant Forrest City Machine Works, Inc. The loan was guaranteed by Mallard Farms Holding Company and David A. Hodges. Forrest City Machine Works defaulted on the loan, and the bank filed suit. Forrest City Machine Works, Mallard Farms, and David Hodges filed lender's-liability counterclaims. The trial court granted summary judgment in favor of Twin City Bank on the counterclaims, and Forrest City Machine Works, Mallard Farms, and David Hodges appeal from the granting of summary judgment. That is all there is to this appeal. Yet, the appellants' abstract is 1,192 pages long, with much of it being single spaced. To give a graphic illustration of the length of the abstract, is was necessary for the appellants to divide it into five volumes, and the five volumes are

approximately five inches thick. While some cases require such a voluminous abstract, this one does not.

Rule 9(d) of the Rules of the Supreme Court and Court of Appeals provides that the appellant's abstract should consist of an impartial condensation "of *only* such material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented to the court for decision." (Emphasis added.) The abstract must be "double spaced, except for quoted material, which may be single spaced and indented." Ark. Sup. Ct. R. 8(a).

The abstract first sets out the pleadings. The first pleading contained in the abstract is the complaint. While there is no appeal from the judgment granted on the complaint, it should have been abstracted, not quoted verbatim over five single-spaced pages. The loan agreement attached to the complaint is quoted in full, and it covers thirty additional pages. It is not necessary to an understanding of the appeal. The answer and counterclaim, which are material, are quoted verbatim in seven single-spaced pages. A motion for summary judgment is copied verbatim. A motion to disqualify counsel, which is not material in any way, is copied verbatim on two single-spaced pages. A motion asking to schedule a hearing in the trial court is quoted. Again, it has nothing to do with an understanding of the issues in this appeal. A memorandum brief to the trial court is quoted in full in single space. It is not a pleading that is material to this appeal. A response to the motion to disqualify is set out in full. It is not material to the issues on appeal. A memorandum brief on the motion to disqualify is quoted in full on single-spaced pages. Twin City Bank's motion for summary judgment is set out. It is material and is properly included in the abstract. However, immediately after the motion, there appears a verbatim copy of the brief in the trial court in support of the motion. The trial brief is not a pleading that is material to this appeal. An immaterial objection to the form of an order is set out in full, and a brief in support of the response to the motion for summary judgment is quoted verbatim over six and one-half single-spaced pages. Neither of those is properly included in the abstract. An immaterial order scheduling a hearing is set out. Another copy of a brief to the trial court is set out in full. It is not a pleading material to the issues on appeal.

A hearing on various motions was held by the trial court. At that time, the trial court heard only argument of counsel; there was no testimony. Yet, the complete copy of the transcript of the hearing is quoted verbatim on twenty-four single-spaced pages. It is not abstracted in any way. Its length in pages is condensed only by converting the double spacing of the transcript to single spacing in the abstract. Additional parts of the immaterial motion to disqualify are quoted. An amended answer and counterclaim are quoted. They are material, but the pages quoted verbatim are single spaced. A motion of Robert A. Mosbacher, Secretary of the United States Department of Commerce, to substitute as plaintiff and his brief thereon are quoted in full. A motion to strike the Secretary's motion is quoted in full. Again, none of this is material to the appeal. A brief by the Secretary of Commerce is quoted in full over nine single-spaced pages, and the exhibits to the brief are quoted. Again, it is not material. The first condensation, or abstract, does not begin until page 165, and it is the condensation of a deposition. However, much of it is not material to the appeal.

Another hearing was held on January 24, 1991. Again, there is no condensation of the proceeding. Instead, there is a verbatim single-spaced copy of the transcript.

Pages 346 through 375 contain a verbatim single-spaced copy of a transcript of a hearing in federal district court. Pages 388 through 404 consist of a single-spaced verbatim copy of the Secretary of Commerce's response to a motion for summary judgment made by Forrest City Machine Works, Mallard Farms, and David Hodges. Again, this has nothing to do with this appeal. Pages 404 through 634 are verbatim copies of partial transcripts from the federal district court. There is no condensation, or abstract, of this 230 pages of testimony taken from a transcript, and it is all single spaced.

Pages 635 through 717 are single-spaced verbatim responses to interrogatories. Almost none of the responses have anything to do with the issues on appeal. For example, twenty-one of the pages of the responses are listings of potential witnesses who might be called if the case had been tried.

Pages 980 to 992 consist of a verbatim copy of the Secretary of Commerce's response to Forrest City Machine Works's,

Mallard Farms's and David Hodges's motions for summary judgment. Again, this is immaterial to this appeal in which Forrest City Machine Works, Mallard Farms, and David Hodges are appealing from the summary judgment dismissing their counterclaim for lenders' liability against Twin City Bank.

Pages 995 through 1051 contain a single-spaced reproduction of the transcript of a hearing held on August 22, 1991. The transcript is the redaction of the oral arguments made by counsel. It does not include any testimony, and is not necessary to an understanding of the case. Pages 1065 through 1073 contain a verbatim copy of a motion by the Secretary of Commerce, and, again, it is immaterial.

Pages 1077 through 1100 are a verbatim single-spaced copy of the transcript of another hearing in the federal district court. The hearing is material, but none of the transcript is abstracted. The only condensation is in the number of pages, but this is done by converting the abstract to single-spaced pages. Pages 1106 through 1116 contain verbatim copies of motions by the Secretary of Commerce.

Most of the remaining pages of the abstract contain verbatim quotes from trial briefs and are not pleadings necessary to an understanding of the issues on appeal.

In summary, the bulk of the material contained in the abstract is not necessary to an understanding of the issues on appeal. Rule 9(d) mandates that an abstract be of *only* such material parts of the pleadings, proceedings, facts, documents, and other matters in the record *as are necessary to an understanding of the questions presented to the court for decision.* Most of the abstract is single spaced, and our rule requires that it be double spaced, except for quotations, which must be indented. Finally, very little of the record is truly abstracted. The transcripts of testimony from various courts are not abstracted. They are quoted verbatim single spaced. The only abstract of testimony in the first person is contained in the abstract of two depositions, but those depositions are of questionable materiality. It is true, as set out in the majority opinion, that there was some condensation of the record because the original record, including exhibits, ran slightly over 3,500 pages, while the abstract covers 1,192 pages. Nevertheless, although it is also true that some matters have been

omitted from the abstract entirely, there was no reasonable basis for including those matters in the first place, and much of the significant reduction in the number of pages was the result of single spacing the abstract in violation of our rules. Other condensation was the result of including more documents on one page in the abstract than in the record. For example, if there were two letters in the record that covered a page and a half each, those two letters would take up four pages in the record. However, appellants included the letters in the abstract without any space between them so that they would only take up three pages. That is not the type of condensation contemplated by Rule 9. The appellants simply made no meaningful effort to comply with Rule 9. Their abstract is *flagrantly* deficient, and I would follow our longstanding practice and dismiss their appeal. Similar cases in which we have dismissed the appeal are the following: *Rose City Property Owners' Ass'n* v. *Thorne*, 299 Ark. 29, 770 S.W.2d 655 (1989); *Coffelt* v. *Arkansas State Highway Comm'n*, 289 Ark. 348, 712 S.W.2d 283 (1986); *Oaklawn Jockey Club, Inc.* v. *Jameson*, 280 Ark. 150, 655 S.W.2d 417 (1983); *Harris* v. *Arkansas Real Estate Comm'n*, 274 Ark. 537, 627 S.W.2d 1 (1982); *Gray* v. *Ouachita Creek Watershed Dist.*, 239 Ark. 141, 387 S.W.2d 605 (1965).

Aside from the obvious reason for this concurring opinion, there are underlying reasons. First, if each judge on this court is to be able to read all of the briefs submitted to us each week, we must enforce Rule 9. It took about twelve hours to read the abstract and the briefs in this case, and this case was only one of nine that were submitted on one particular submission date. If the abstracts submitted in the other cases had also been flagrantly in violation of the rule, we could not possibly have had a multi-judge review of each case, and a multi-judge review is the very foundation of our appellate review system. Second, courts do a disservice both to the public in general and to the members of the bar when we fail to hold practicing lawyers to a high standard of professional service. In the past, we have tried to hold practicing lawyers to such a standard. Third, Rule 9 and its predecessor rules have been with us for many years. It is not a new rule. The majority opinion does a disservice to those practicing lawyers who have met the standard over the years, and it does an injustice to those lawyers who have previously had their cases dismissed for failure to comply with

Rule 9. Accordingly, I wish to disassociate myself from the last sentence of the majority opinion. I would dismiss this appeal because of a deficient abstract.